USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/14/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                               :
GORDON SURGICAL GROUP, P.C.,                                   :
PREMIER MEDICAL ASSOCIATES OF THE                             :
HUDSON VALLEY, LLP, *and* NORTHERN                            :          1:21-cv-4796-GHW
WESTCHESTER SURGICAL ASSOCIATES,                             :
LLP,                                                          :
                                                               :
                                      Plaintiffs,              :          MEMORANDUM OPINION &
                                                               :                   ORDER
                    -against-                                 :
                                                               :
EMPIRE HEALTHCHOICE HMO, INC., *and*                         :
EMPIRE HEALTHCHOICE ASSURANCE,                               :
INC.,                                                         :
                                                               :
                                      Defendants.              :
                                                               :
-------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

      Between 2015 and 2020, Plaintiffs—three affiliated general surgery providers—provided

surgical services to 126 patients who are members or beneficiaries of health insurance plans

administered by Defendants.  Plaintiffs have not joined Defendants' provider networks and are

therefore considered "out-of-network" providers.  The providers seek over $1 million in

reimbursement of their charges for 291 "medical claims"[1] governed by 72 different health insurance

plans;[2] 209 of the medical claims are governed by ERISA plans.[3]  In a thirty-two-page complaint,

Plaintiffs alleged only two federal and five state causes of action, which purport to cover 291 distinct

alleged failures to reimburse Plaintiffs for medical services provided to over a hundred patients,

across 72 different plans.  Perhaps unsurprisingly, Magistrate Judge Katharine H. Parker found that

---

[1] "Medical claims" is the term Plaintiffs use to refer to "reimbursement for medically necessary health care services
provided to 130 patients . . . , as set forth [in] 299 individual medical claims."  *See* Second Amended Complaint (the
"SAC"), Dkt. No. 58 ¶ 22.  The Court uses the term "medical claims" throughout accordingly.

[2] As noted by Defendants and Magistrate Judge Parker, Plaintiffs assert causes of action for 299 medical claims
concerning services provided to 130 patients, whereas the exhibit attached to the SAC lists 291 medical claims for 126
patients.  *See* SAC ¶ 22.  Like Judge Parker, the Court relies on Plaintiffs' Exhibit 1 for purposes of this motion.

[3] The parties do not dispute that 79 medical claims are governed by non-ERISA plans.

Plaintiffs failed to meet their pleading requirements:  Plaintiffs' scant 32-page complaint failed to adequately allege that Defendants breached dozens of different plans' terms undergirding the 209 discrete medical claims for which Plaintiffs seek reimbursement.  Specifically, Judge Parker found that Plaintiffs failed to exhaust their administrative remedies, and they failed to adequately state a claim under Section 502(a)(1)(B) of ERISA as to each of these 209 medical claims.

The Court agrees with Judge Parker:  in failing to specify exhaustion, wrongful denial of benefits, and "participant or beneficiary" status as to *each* medical claim, Plaintiffs' claims must be dismissed.  Accordingly, the Court adopts the R&R nearly in full, with two exceptions.  First, the Court modifies Judge Parker's reasoning as to the regulatory noncompliance issue; and second, the Court grants leave to amend.

## I.     BACKGROUND

The Court refers to the Report and Recommendation for a comprehensive description of the facts of this case.  *See* Dkt. No. 85 (the "R&R") at 2–8.  Procedurally, it commenced with Plaintiffs filing the initial complaint on June 1, 2021; the amended complaint was filed on February 25, 2022.  Dkt. Nos. 1, 35.  On February 3, 2023, Plaintiffs filed a second amended complaint.  Dkt. No. 58 (the "SAC").  They brought suit under Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA") and state law, asserting seven causes of action in the SAC.

Plaintiffs claimed, first, that Defendants breached the terms of myriad ERISA plans in violation of ERISA Section 502(a)(1)(B) either by (at times) denying Plaintiffs' reimbursement requests, or by (at other times) underpaying Plaintiffs in response to their reimbursement requests.[4] For these alleged violations, Plaintiffs seek to recover unpaid and underpaid benefits, coupled with declaratory and injunctive relief.  Second, Plaintiffs claimed that Defendants' failure to provide a full and fair review of the medical claims violated Section 502(a)(3) of ERISA; for this, Plaintiffs seek

---

[4] Specifically, Plaintiffs allege violations of "ERISA § 502(a)(1)(B), as codified in 29 U.S.C. § 1132(a)(1)(B), and 29 C.F.R. § 2590.715-719A(b)(3)(i)(A)-(C)."  *See* R&R at 5; SAC ¶ 86.

declaratory and injunctive relief.[5]  Last, Plaintiffs asserted five state-law causes of action—for breach of express contract, breach of implied contract, unjust enrichment, tortious interference with contract, and breach of third-party beneficiary contract rights.

On March 31, 2023, Defendants moved to dismiss the SAC on the ground that Plaintiffs failed to state a claim under ERISA and state law.  Dkt. Nos. 63 (the "Motion"), 64 ("Defendants' Mem.").  Defendants asserted several grounds for dismissal of the ERISA claims, some of which apply to all medical claims for which Plaintiffs sought relief, while others apply only to subsets of the medical claims.  *See* Defendants' Mem. at 7–24.  Plaintiffs responded on May 19, 2023.  Dkt. No. 71 ("Plaintiffs' Mem.").  On June 16, 2023, Defendants filed their reply.  Dkt. No. 76.

On December 7, 2023, Magistrate Judge Parker issued her R&R, concluding, first, that Plaintiffs failed to adequately plead exhaustion of administrative remedies as to all 209 medical claims governed by ERISA plans.  Second, she concluded that Plaintiffs failed to adequately plead wrongful denial of benefits as to all 209 medical claims governed by ERISA plans.  Third, Judge Parker concluded that Plaintiffs failed to adequately plead their status as plan participants or beneficiaries, as to the 84 medical claims governed by ERISA plans with anti-assignment provisions.  Fourth, she dismissed 37 of the medical claims governed by ERISA plans as time-barred.  Fifth, she recommended declining to exercise supplemental jurisdiction over the remaining state law claims.  *See generally* R&R.  Judge Parker accordingly recommended that the motion to dismiss the SAC be granted in full, and that leave to amend the complaint for the third time be denied.  *Id.* at 34–35.

On January 5, 2024, Plaintiffs filed timely objections to the R&R.  Dkt. No. 88 (the "Objections").  Two weeks later, Defendants responded to the Objections.  Dkt. No. 89 (the "Response").

Because the Court finds that Judge Parker's conclusions were sound, the Court adopts in full

---

[5] Specifically, Plaintiffs seek this relief "pursuant to ERISA § 502(a)(3), as codified in 29 U.S.C. § 1132(a)(3)."  R&R at 5; *see also* SAC ¶ 99.

Judge Parker's recommendation that Defendants' motion to dismiss be granted. The Court adopts Judge Parker's reasoning nearly in full, with the exception of one aspect described below—namely, as to whether any regulatory noncompliance alters the applicable limitations period in this case. And unlike Judge Parker, the Court grants Plaintiffs leave to amend the complaint a third time.

## II.    STANDARD OF REVIEW

District courts may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). A district court must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "To the extent, however, that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-cv-6865-LTS-GWG, 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citation omitted); *see also Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition.") (citation omitted). "Objections of this sort are frivolous, general and conclusory and would reduce the magistrate's work to something akin to a meaningless dress rehearsal. The purpose of the Federal Magistrates Act was to promote efficiency of the judiciary, not undermine it by allowing parties to relitigate every argument which it presented to the Magistrate Judge." *Vega v. Artuz*, No. 97 Civ. 3775 (LTS)(JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002) (internal quotation marks and citations omitted).

## III.    DISCUSSION

Generally, the Court treats Plaintiffs' objections regarding Judge Parker's conclusions that Plaintiffs failed to exhaust their administrative remedies and failed to state a claim under ERISA as sufficiently precise to merit *de novo* review, with the exceptions identified below. Plaintiffs timely

4

objected, and the majority of their objections are "specific and clearly aimed at particular findings in the magistrate judge's proposal." *McDonough v. Astrue*, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009) (citation omitted).  Therefore, the Court reviews these conclusions *de novo*.

The Court first reviews the R&R's conclusions regarding the dismissal of Plaintiffs' claims that Defendants violated Section 502(a)(1)(B) of ERISA by breaching the terms of the relevant ERISA plans.  The Court then reviews Judge Parker's conclusions regarding the alleged violations of Section 502(a)(3) of ERISA due to Defendants' alleged failures to provide a full and fair review of the medical claims.

### A.  Plaintiffs' Section 502(a)(1)(B) Claims

In Count One of the SAC, Plaintiffs alleged that Defendants violated Section 502(a)(1)(B) of ERISA by breaching the terms of dozens of ERISA plans by failing to reimburse Plaintiffs for 209 different medical claims.  *See* SAC ¶¶ 80–88.[6]  Because Judge Parker correctly concluded that Plaintiffs failed to exhaust their administrative remedies and failed to state a claim under Section 502(a)(1)(B), Plaintiffs' claims under Section 502(a)(1)(B) are dismissed.

### 1.  Failure to Exhaust Administrative Remedies

Judge Parker correctly concluded that Plaintiffs failed to exhaust their administrative remedies for Plaintiffs' 209 medical claims alleging violations of Section 502(a)(1)(B) under plans governed by ERISA.  *See* R&R at 10–17.  Judge Parker correctly laid out the governing law that establishes that a plaintiff must exhaust its administrative remedies prior to commencing an ERISA action in federal court.  *See id.* at 10–11 (collecting cases).  And "courts routinely dismiss ERISA claims brought under Section 502(a)(1)(B) on a 12(b)(6) motion to dismiss where the plaintiff fails to plausibly allege exhaustion of remedies." *Abe v. New York Univ.*, No. 14-CV-9323 (RJS), 2016 WL

---

[6] "Counts One and Two encapsulate 209 different Medical Claims, which are governed by over 40 different ERISA Plans."  R&R at 10.  The Court refers the reader to the R&R and its accompanying spreadsheet for a precise breakdown of how all 291 medical claims are distributed across the plans.  *See id.* at 37–45.

1275661, at *5 (S.D.N.Y. Mar. 30, 2016) (Sullivan, J.) (dismissing claim under Section 502(a)(1)(B) where "no facts suggest[ed] any effort to exhaust the remedies available through [plaintiff's] ERISA administrative plan") (collecting cases).

Here, as Judge Parker observed, the SAC puts forth two examples of patients' medical claims for which Plaintiffs allege they exhausted their administrative remedies; Plaintiffs argue that these two examples are illustrative and adequate to establish exhaustion as to *all* 209 medical claims. As Judge Parker rightly concludes, this pleading is inadequate. The SAC "does not discuss [each] particular Plan's exhaustion requirements, whether Plaintiffs (or the Members/Patients) followed or completed that procedure, and whether Plaintiffs (or the Members/Patients) met the various requirements to complete the appeal process. Rather, Plaintiffs simply assert that they submitted one appeal to Empire and thereafter engaged in a 'dialogue' with Empire" as to that claim, in addition to an "unsuccessful" appeal with one other exemplary claim. *See* R&R at 12; *see also id.* at 12–13 (collecting cases); SAC ¶¶ 57–62 (putting forth two examples and asserting, in conclusory fashion, that Plaintiffs' exhaustion attempts with respect to the other medical claims were "similar").

Notwithstanding the SAC's two specific examples given purporting to establish exhaustion, Judge Parker correctly concluded that "the broad allegation that Plaintiffs 'followed a similar pattern of attempted negotiations and appeals in connection with the services provided to all the Patients' is certainly insufficient to withstand a motion to dismiss as to the remaining 205 Medical Claims that are governed by ERISA Plans." R&R at 13 (quoting SAC ¶ 62); *see also id.* at 13–14 (collecting cases). Indeed, "[n]othing in the SAC suggests that Plaintiffs (or the Members/Patients) appealed pursuant to the procedure set out in each ERISA Plan, and the Court lacks a basis to reasonably infer that said procedures were followed." *Id.* at 15. Judge Parker correctly concluded that Plaintiffs were required to provide the relevant plans' exhaustion requirements and alleged sufficient facts showing that they followed the relevant procedures as to *each* medical claim. *See* R&R at 13–16.

6

Judge Parker therefore concluded that Counts One and Two should be dismissed in their entirety due to Plaintiffs' failure to exhaust their administrative remedies.  *See id.* at 15–16.[7]

Plaintiffs' objections to this conclusion are unavailing.  Plaintiffs first take issue with the line of cases cited by Judge Parker in support of the pleading requirement regarding exhaustion of administrative remedies.  Plaintiffs argue that the R&R "mischaracterizes" the cases cited by Judge Parker.  Objections at 5.  They then contend that "provid[ing] examples of how [they] exhausted administrative remedies, and then alleg[ing] that similar patterns were followed in all the other cases" "meets the exhaustion plausibility requirement."  *Id.* at 5–6.  But Judge Parker correctly concluded that allegations that Plaintiffs attempted "to enter into a meaningful dialog" with Defendants and filed "written appeals" on specific dates in two instances—allegations which Plaintiffs repeated for each of the 209 claims without any reference to the terms of the relevant ERISA plans—was not sufficient to plead exhaustion.  *See id.* at 14–15 (citing, *inter alia*, *Neurological Surgery, P.C.*, 511 F. Supp. 3d at 293–95 (concluding that allegations that the plaintiff "attempt[ed] 'to enter into a meaningful dialog'" with the defendants and repeating conclusory allegations 200 times for each medical claim was insufficient to withstand motion to dismiss)).[8]  The cases cited by Judge Parker support her conclusion that the Plaintiffs failed to adequately "allege that Plaintiffs (or the Members/Patients)

---

[7] Plaintiffs are correct to note that "it is Empire's burden to establish failure to exhaust as an affirmative defense . . . ." Objections at 2.  Nonetheless, as Judge Sullivan has stated, Section 502(a) claims are "routinely dismissed" on motions to dismiss "where the plaintiff fails to plausibly allege exhaustion of remedies."  *See Abe*, 2016 WL 1275661, at *5.  As Judge Parker concluded, merely discussing "a sampling of specific appeals," *see* Objections at 5, is insufficient to establish exhaustion as to each medical claim.  *See* R&R at 13–16.

[8] *Cf. Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 595 (2d Cir. 1993) (affirming district court's finding that exhaustion was not adequately pleaded where one set of plaintiffs attempted to "claim exhaustion based on . . . correspondence" between the defendants and a different set of plaintiffs, in part because "there [were] substantial differences between the two subclasses of plaintiffs which make any claim of exhaustion by one subclass based on the appeals of the other inappropriate").  Moreover, it is not lost on the Court that Plaintiffs' counsel was also involved in *Neurological Surgery, P.C. v. Aetna Health Inc.*, in which Plaintiffs' counsel encountered a similar problem.  In *Neurological Surgery*, Judge Hurley found that "Plaintiff cannot satisfy its pleading burden by simply arguing 'it administratively appealed each of the 200 claims at issue with Aetna,'" a statement which was "mere[ly] conclusory" and offered "without any plausible factual allegations in support."  *See* 511 F. Supp. 3d at 293–95.  Here, too, Plaintiffs' counsel have attempted to aggregate over 200 medical claims in the guise of merely two alleged ERISA violations, offering conclusory allegations and supposed illustrative examples, while declining to adequately plead each element of the alleged violation as to each medical claim for which Plaintiffs seek reimbursement.

ever attempted to participate in the appropriate appeals processes provided by the various Plans"
and failed to allege sufficient facts showing that Plaintiffs followed the relevant procedures as to *each*
medical claim. *See* R&R at 15–16 (collecting cases and distinguishing Plaintiffs' cases—the same
cases provided in the Objections).

Like Judge Parker, the Court "sympathizes with medical providers who are required to deal
with the administrative nightmare of sorting through and complying with these various appeals
processes." *See* R&R at 14. The Court is sympathetic to Plaintiffs' policy argument on this ground.
Nonetheless, the Second Circuit "has recognized 'the firmly established federal policy favoring
exhaustion of administrative remedies in ERISA cases.'" *Kennedy v. Empire Blue Cross & Blue Shield*,
989 F.2d 588, 594 (2d Cir. 1993) (quoting *Alfarone v. Bernie Wolff Construction*, 788 F.2d 76, 79 (2d
Cir.), *cert. denied*, 479 U.S. 915 (1986)). The requirement of administrative exhaustion itself serves
important policy goals—namely, those of "(1) uphold[ing] Congress' desire that ERISA trustees be
responsible for their actions, not the federal courts; (2) provid[ing] a sufficiently clear record of
administrative action if litigation should ensue; and (3) assur[ing] that any judicial review of fiduciary
action (or inaction) is made under the arbitrary and capricious standard, not *de novo*." *Id.* (quoting
*Denton v. First Nat'l Bank of Waco, Texas*, 765 F.2d 1295 (5th Cir. 1985), *reh'g denied*, 772 F.2d 904 (5th
Cir. 1985) (internal quotation marks omitted). That exhausting one's administrative remedies may
be time-consuming or burdensome does not obviate Plaintiffs' need to do so.

Judge Parker was also correct to conclude that Plaintiffs have not "shown futility," which
may have excused their failure to plead exhaustion. *See* R&R at 15–16 (analyzing the issue and
citing, *inter alia*, *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 140 (2d Cir. 2000) ("[A]bsent a
'clear and positive showing' that seeking review by the carrier would be futile, [a plaintiff's
administrative] remedy must be exhausted prior to the institution of litigation." (citation omitted)).
Judge Parker correctly concluded that here, "Plaintiffs have not shown futility because the SAC does
not allege that Plaintiffs (or the Members/Patients) ever attempted to participate in the appropriate

appeals processes provided by the various Plans." *See id.* at 16.  Plaintiffs' objection restates the argument made in their memorandum in opposition to Defendants' motion to dismiss—namely that "Empire has made only minimal payment on Plaintiffs' claims," "[a]ppeals were uniformly unsuccessful" (citing SAC ¶¶ 59–61, which states only that appeals as to two specific patients' medical claims were unsuccessful),[9] and that "[a]ny attempt at dialog was rebuffed" (citing SAC ¶¶ 57–58, which states only that "Plaintiffs attempted to enter a meaningful dialog," which "included taking available appeals").  *See* Objections at 6–7.  Plaintiffs argue that these allegations, in conjunction with the fact that "$1 million in claims remains outstanding," suffice to establish futility because "any appeal of these decisions would be impractical."  *See id.*; *see also* Plaintiffs' Mem. at 16–17 (making the same argument as in the Objections).  The Court finds no error in Judge Parker's conclusion that these allegations fail to establish futility.  Therefore, the Court adopts Judge Parker's recommendation that all 209 medical claims be dismissed for failure to exhaust administrative remedies.

## 2.  Failure to Plead Wrongful Denial of Benefits

Judge Parker also correctly concluded that Plaintiffs failed to state a claim as to all 209 medical claims governed by ERISA plans because Plaintiffs failed to adequately plead wrongful denial of benefits under Section 502(a)(1)(B).  *See* R&R at 18–20.  Judge Parker rightly observed that Plaintiffs' "spreadsheet and the SAC do not specify the relevant Plan provision that would entitle Plaintiffs to the requested relief for each Medical Claim," and that "the SAC does not plead with the required specificity how the wrong reimbursement rates were applied, nor that Plaintiffs are entitled to the requested reimbursements."  *Id.* at 19.  As a result, she correctly concluded that "the pleading is simply too conclusory to demonstrate a plausible violation of any of the relevant Plan payment

---

[9] As Judge Parker correctly concluded, providing two examples is insufficient to meet the pleading standard.  And although the Objections assert that "[a]ppeals were uniformly unsuccessful," *see* Objections at 6, Plaintiffs may not amend their pleadings through their briefing, *see, e.g.*, *Budhani v. Monster Energy Co.*, No. 20-CV-1409 (LJL), 2021 WL 5761902, at *3 (S.D.N.Y. Dec. 3, 2021).

provisions," so Plaintiffs failed to state a claim.  *See id.* at 20; *see also Farkas, M.D., LLC v. Grp. Health Inc.*, No. 18CIV8535CMKHP, 2019 WL 657006, at *6 (S.D.N.Y. Feb. 1, 2019) ("To prevail under § 502(a)(1)(B), a plaintiff must show that: (1) the plan is covered by ERISA; (2) the plaintiff is a participant or beneficiary of the plan; and (3) the plaintiff was wrongfully denied a benefit owed under the plan." (citing *Giordano v. Thomson*, 564 F.3d 163, 168 (2d Cir. 2009)).

Plaintiffs argue that Judge Parker "fails to cite any legal support for th[e] conclusion" that Plaintiffs "had to allege the precise terms of each plan applicable to each of the 200+ claims at issue." Objections at 9.  Judge Parker's conclusion is, however, supported by the cases cited by Judge Parker, which dismiss claims brought under Section 502(a)(1)(B) for failure to plead with specificity the plan provisions entitling the plaintiff to the requested relief.  *See* R&R at 19–20 (collecting cases).

Plaintiffs assert that the SAC cites specific provisions of a "sampling" of the ERISA plans at issue.  *See* Objections at 7–8 (citing SAC ¶¶ 34–37, 44–46).  Plaintiffs then fault the R&R for failing to accept the "inference that [the other] plans contain similar terms and thus plausibly allege claims for relief."  *Id.* at 9.  The Court finds this objection unpersuasive.  As described above, the Court adopts Judge Parker's conclusion that providing mere illustrative examples is insufficient. Accordingly, Plaintiffs' claims are dismissed for failure to identify the terms of each plan applicable to the wrongful denial of each medical claim.[10]

Lastly, Plaintiffs argue that the R&R "misperceives the allegations of the Amended Complaint and the Practice's theory of recovery" for assuming that Plaintiffs are seeking reimbursement of the medical claims at a rate of 100%.  *Id.* at 9–10.  In a footnote to the

---

[10] Defendants attached the relevant plans to a declaration accompanying their motion to dismiss.  *See* Dkt. No. 66. Plaintiffs do not, however, point to any portions of the plan that were allegedly breached—either in the SAC or this briefing.  As Judge Parker correctly concluded, it is not for the Court to remedy Plaintiffs' failure to adequately plead wrongful denial of benefits by parsing through the relevant plans and identifying which reimbursement rate should apply to each medical claim.  Nor may the pleadings be amended through the parties' briefing, in any case.  *See, e.g., Budhani*, 2021 WL 5761902, at *3.

Objections, Plaintiffs explain that the exhibit includes the amount billed because it "is the maximum amount of damages to which the Practice would be entitled to receive for each medical claim, if its billed amount was at or lesser than Maximum Allowable Amount as defined in the Plan." *Id.* at 10 n.2. This clarification does not, however, remedy the deficiency in Plaintiffs' pleadings. As Judge Parker correctly concluded, Plaintiffs do not specify the terms of the plans that allegedly entitle them to a particular benefit. Thus, in addition to Plaintiffs' failure to exhaust administrative remedies, the Court dismisses Plaintiffs' claims alleging violations of Section 502(a)(1)(B) because of Plaintiffs' failure to adequately plead wrongful denial of benefits.

### 3.   Failure to Plead Status as Participants or Beneficiaries

Judge Parker correctly concluded that Plaintiffs lack "statutory standing" as to the 84 medical claims governed by ERISA plans.[11] *See* R&R at 20–28. This is because Plaintiffs failed to adequately plead their status as plan participants or beneficiaries, which is required to state a claim under Section 502(a)(1)(B). *See id.* (setting forth the legal standard and collecting cases); *see also, e.g.,* *Farkas, M.D., LLC,* 2019 WL 657006, at *6. Plaintiffs contended that they have standing as to these 84 medical claims on four theories—all of which Judge Parker rightly rejected. *See* Plaintiffs' Mem. at 3–12; R&R at 20–28. Judge Parker began her analysis by correctly observing that "Plaintiffs admit that they are not participants, beneficiaries, or fiduciaries of any of the ERISA Plans." R&R at 21. As spelled out below, she correctly concluded that the plans' anti-assignment provisions were neither waived nor otherwise rendered unenforceable on any of Plaintiffs' theories. *See id.* at 20–28.

First, Judge Parker rightly rejected Plaintiffs' argument that Defendants had provided "written consent" to assignment through their written correspondence with Plaintiffs. *See id.* at 23;

---

[11] Defendants refer to the Plaintiffs' lack of "statutory standing" under ERISA. Defendants' Mem. at 7–13. As Judge Parker observed, "[t]his is often referred to as 'statutory standing,' but is ultimately a question of whether the plaintiff failed to state a claim, and thus is an issue properly considered under Rule 12(b)(6), as opposed to a Rule 12(b)(1)." R&R at 21; *see also Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.,* 821 F.3d 352, 359 (2d Cir. 2016) "The Supreme Court has recently clarified . . . that what has been called 'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff has a cause of action under the statute." (internal quotation marks and citation omitted)).

Plaintiffs' Mem. at 4–7.  Judge Parker correctly found that "[t]he alleged communications [between Plaintiffs and Defendants] merely indicated Defendants' willingness to communicate directly with Plaintiffs to some extent, and do not constitute 'written consent' to assignment of benefits."  R&R at 23.

Second, Judge Parker also correctly rejected Plaintiffs' alternative argument "that even if Defendants' dealings with Plaintiffs do not constitute written consent to the assignment of benefits, Defendants' actions, 'at the very least, constitute a full and enforceable waiver of the terms of the purported anti-assignment clauses.'"  *See id.* (collecting cases) (quoting SAC ¶ 76).  Judge Parker aptly concluded that Plaintiffs had not alleged sufficient facts to support their theory that Defendants waived the anti-assignment provisions.  *See id.* at 24–27 (citing, *inter alia, Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 585 (2d Cir. 2006) ("Because waiver of a contract right must be proved to be intentional, the defense of waiver requires a clear manifestation of an intent . . . to relinquish [a] known right . . . ." (internal quotation marks and citations omitted)).  And she found that because "discovery has already been exchanged in this case," "if there was evidence to establish waiver, such evidence should have been exchanged and more facts supporting waiver presented in the SAC."  *Id.* at 25.  She denied Plaintiffs' request for additional discovery on the waiver issue "because the SAC does not permit a reasonable inference that Defendants waived the anti-assignment provisions, and thus is 'devoid of any factual content necessary to open the doors to' further discovery" at this time.  *Id.* at 26 (citations omitted).

These conclusions are sound.  Plaintiffs' objections—which, as Plaintiffs acknowledge, merely restate arguments already raised in their opposition papers below—do not compel an alternative conclusion.  *See* Objections at 12 (acknowledging that their arguments pertaining to Defendants' actions arguably constituting waiver were already "explain[ed] in [Plaintiffs'] opposition" and rejected by Judge Parker).

Third, Judge Parker rightly rejected Plaintiffs' argument that some of the plans' direct payment provisions (permitting direct payment to out-of-network providers) render the plans' anti-assignment clauses ambiguous.  *See* R&R at 26–27 (analyzing the issue and collecting cases). Plaintiffs object by merely reiterating their argument that Defendants "[have not] met [their] burden to establish that the anti-assignment clauses expressly and unambiguously defeat standing." Objections at 12.  However, as Judge Parker correctly concluded, the direct payment provisions here do not render the plans' anti-assignment clauses an effective nullity.  *See, e.g.,* R&R at 23 ("The alleged communications merely indicated Defendants' willingness to communicate directly with Plaintiffs to some extent, and do not constitute 'written consent' to assignment of benefits."); *id.* at 23–25 (collecting cases that arrived at similar conclusions).  Nor does Plaintiffs' argument that direct payment in combination with "knowledge by Empire of the claimed assignment at the time of claim submission" and "dealing directly with the Practice" suffice to establish waiver here, for the reasons Judge Parker laid out in her R&R.  *See* Objections at 13; *see also* R&R at 24–27.

Fourth, Judge Parker correctly rejected Plaintiffs' argument "that as to those medical services that were provided on an emergency basis, federal and state law prohibits the anti-assignment provisions and renders them unenforceable" because "[n]othing in the . . . regulations [cited by Plaintiffs] states that anti-assignment provisions are unenforceable in the event of an emergency procedure."  *See* R&R at 27.  As Judge Parker observed, the ERISA regulation Plaintiffs cite provides that "[i]f a group health plan, or a health insurance issuer offering group health insurance coverage, provides any benefits with respect to services in an emergency department of a hospital, the plan or issuer must cover emergency services . . . consistent with the rules of" the regulation.  29 C.F.R. § 2590.715-2719A(b).  The regulation states that the plan "must provide *coverage* for emergency services," and it must do so, "[i]f the emergency services are provided out of network, without imposing any administrative requirement or limitation on *coverage* that is more restrictive than the requirements or limitations that apply to emergency services received from in-network

providers." *Id.* (emphasis added).  Plaintiffs read this regulation to imply that "no assignment is required or anti-assignment clause is enforceable with respect to" any "medical services at issue in this lawsuit" that were rendered under emergency circumstances.  *See* Objections at 15; *see also* Plaintiffs' Mem. at 10–11 (arguing, without citing a single case in support of this view, that whenever "emergency medical services are provided by out-of-network medical providers . . . health plans, such as Empire, must reimburse the providers directly for those services without the need of an assignment").  Judge Parker concluded that Plaintiffs' policy-based argument, which ignores the clear text of the regulation, is unavailing:  "anti-assignment provisions are not 'limitations on coverage' because they do not limit the Members' coverage, but instead limit who can sue to enforce coverage." *See* R&R at 27–28.

Plaintiffs object to this conclusion, arguing that it "inappropriately exalts form over substance."  Objections at 16.  Plaintiffs do not—and cannot—refute Judge Parker's persuasive textual analysis of the regulation, which led her to correctly conclude that anti-assignment clauses are not "limitations on coverage;" anti-assignment clauses limit only those "who can sue to *enforce* coverage." *See* R&R at 27–28 (emphasis added).  As Judge Parker aptly acknowledges, "Plaintiffs do not point to [any] case law supporting" their expansive construction of the regulation. *See id.* at 27; *see also* Objections at 13–16 (again supplying zero caselaw in support of Plaintiffs' reading of the regulation).  Thus, the Court adopts in full the R&R's recommendation that these claims be dismissed because "Plaintiffs have failed to show that they are authorized to bring ERISA claims as to 84 the Medical Claims within Counts One and Two." *See* R&R at 28.

### 4.  Time-Barred Claims

Judge Parker correctly concluded that Plaintiffs failed to state a claim as to 37 medical claims governed by ERISA plans because these claims are time-barred—although the Court modifies the reasoning in part.  In determining whether an ERISA claim is time-barred, "[t]he starting point is the applicable limitations period.  The Employee Retirement Income Security Act of 1974 . . . does not

prescribe a limitations period for 29 U.S.C. § 1132 actions . . . ."  *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 78 (2d Cir. 2009) (per curiam).  "Therefore, the applicable limitations period is '[the one] specified in the most nearly analogous state limitations statute.'"  *Id.* (citing *Miles v. N.Y. State Teamsters Conference Pension & Ret. Fund Employee Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir. 1983)).  Here, "New York's six-year limitations period for contract actions, N.Y. C.P.L.R. 213, applies as it is most analogous to § 1132 actions."  *Id.*  "New York permits contracting parties to shorten a limitations period, however, if the agreement is memorialized in writing."  *Id.* (citing N.Y. C.P.L.R. 201).  Moreover, "[t]he principle that contractual limitations provisions ordinarily should be enforced as written is especially appropriate when enforcing an ERISA plan."  *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013).

As Judge Parker acknowledges, Plaintiffs concede that 37 medical claims "fall outside of the limitations period provided by the relevant plans."  *See* R&R at 29; *see also* Plaintiffs' Mem. at 17–18. Plaintiffs also do not dispute that the plans at issue provide that the limitations period begins to run from the date that the medical service was provided.  *See* Plaintiffs' Mem. at 17.  Judge Parker correctly concluded that the plan-imposed time limitations, which began to run from the dates the services were provided, bar these 37 medical claims as untimely.  She rightly rejected Plaintiffs' argument that "that the Plans' limitations periods are not enforceable here, because to the extent Defendants made adverse benefit determinations, those adverse benefits determinations failed to comply with the DOL Regulation because they did not set forth the plan-imposed time limits for seeking judicial review."  *See* R&R at 30; *see also id.* at 28–33 (collecting cases).

In rejecting this argument, Judge Parker undertook an extensive analysis.  As Judge Parker correctly observed, Department of Labor ("DOL") regulations "promulgated pursuant to 29 U.S.C. § 1133, require every employee benefit plan governed by ERISA to 'establish and maintain reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations.'"  R&R at 28–29 (quoting 29 C.F.R. § 2560.503-1(b)

(the "DOL Regulation")).  "The DOL Regulation requires administrators to provide claimants with a notification of any adverse benefit determination setting forth," among other things, "a 'description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review.'"  *Id.* at 29 (quoting DOL Regulation).

Judge Parker examined caselaw interpreting the DOL Regulation.  *See id.* at 28–33.  This caselaw addressed whether a plan's limitations period was "triggered" by a defendant's failure to comply with the DOL Regulation, in cases where the plans' limitations periods were set to begin from the date of denial of services—rather than from the date of medical service provision, as here.  *See* R&R at 32–33 (citing *Mizra v. Ins. Adm'r of Am., Inc.*, 800 F.3d 129, 137–38 (3d Cir. 2015) ("Because the denial letter [the plaintiff] received . . . did not comply with the regulatory requirements [of § 2560.503–1(g)(1)(iv)], the one-year deadline for judicial review was not triggered."); *Popovchak v. UnitedHealth Grp. Inc.*, No. 22-CV-10756 (VEC), 2023 WL 6125540, at *8 (S.D.N.Y. Sept. 19, 2023) (concluding that the plan-imposed "six-month limitations period was . . . never triggered" because the defendant "fail[ed] to substantially comply with DOL notice requirements" and where "the contractual limitations period for bringing ERISA claims to recover benefits under the Morgan Stanley Plan [was] six months following the denial of a claimant's administrative appeal")).  Judge Parker found these cases inapposite because, in *Mizra* and *Popovchak*, "the relevant plans provided that the limitations period began to run from the date of the denial of benefits rather than (as here and in *Heimeshoff*) from some point before the date of denial of benefits."  R&R at 32–33 (citing *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, No. 3:10CV1813 JBA, 2012 WL 171325, at *1 (D. Conn. Jan. 20, 2012) (*Heimeshoff I*), *aff'd*, 496 F. App'x 129 (2d Cir. 2012) (summary order) (*Heimeshoff II*), *aff'd*, 571 U.S. 99 (2013) (*Heimeshoff III*).

Plaintiffs objected to this conclusion, reiterating the argument made in their memorandum in opposition to Defendants' motion to dismiss.  *See* Objections at 17–18; *see also* Plaintiffs' Mem. at 18.

Specifically, Plaintiffs objected by arguing that the time limitation provisions established in the plans are not enforceable because "[n]one of the applicable plans include their respective time limitation in the summary plan description, and the shortened time limitations were not listed on Empire's claim correspondence" in denying the medical claims, which Plaintiffs argue violates the DOL Regulation. Objections at 16–17; *accord* Plaintiffs' Mem. at 18 (arguing the same).  Moreover, Plaintiffs argue that the "shortened limitation provisions in the applicable health plan documents" do not apply due to Defendants' alleged noncompliance with the DOL Regulation, such that "the applicable limitations period for all claims here is New York's six-year limitations period for [a] breach-of-contract claim . . . ."  *See* Objections at 16–19.  They further argue that "[f]rom what point the period begins to run is irrelevant to the important policy requiring a beneficiary to be told about a shortened limitations period to protect enforcement rights."  Objections at 18–19.

    While Judge Parker's conclusion that these claims are time-barred is correct, the Court modifies the reasoning in part, with respect to the effect of regulatory noncompliance on the timeliness question.  Namely, the Court diverges from Judge Parker's analysis of the implications of *Heimeshoff*.  Although *Heimeshoff I*—a District of Connecticut case from 2012—discusses this issue, the Second Circuit's *Heimeshoff II* leaves open the question of equitable tolling in the case of regulatory noncompliance.  *See also* R&R at 31 (acknowledging this).  In *Heimeshoff II*, the Second Circuit held that "it does not offend the [ERISA] statute to have the limitations period [in a plan governed by ERISA] begin to run before the claim accrues."  *Heimeshoff II* at 130.  Accordingly, the Circuit affirmed the dismissal of a time-barred ERISA claim that was filed after the plan-imposed limitations period.  This holding was subsequently affirmed by the Supreme Court in *Heimeshoff III*. Importantly, in neither case did the Second Circuit nor the Supreme Court address the issue of whether a defendant's violation of the DOL Regulation entitles a plaintiff to equitable tolling of the plan-imposed limitations period.  In *Heimeshoff II*, that question was left unresolved because the "[plaintiff]'s counsel conceded in the district court and at oral argument that he had received a copy

of the plan containing the unambiguous limitations provision long before the three-year period for [the plaintiff] to bring the claim had expired." *See Heimeshoff II* at 130–31.  Judge Parker is correct in her observation that the contractual limitations periods here are at least somewhat analogous to those in *Heimeshoff*, insofar as they began to run on the date that medical services were provided.  *See* R&R at 32.  But neither *Heimeshoff II* nor *Heimeshoff III* compels any conclusion on whether any regulatory noncompliance suffices to toll the plan limitations period.

Nonetheless, the Court need not reach that question here because Plaintiffs have not adequately pleaded that the Defendants violated the DOL Regulation as to each allegedly denied medical claim.  *Cf. M.R. v. United Healthcare Ins. Co.*, No. 1:23-CV-4748-GHW, 2024 WL 863704, at *2–3 (S.D.N.Y. Feb. 29, 2024) (Woods, J.).  Plaintiffs do not adequately allege in the SAC that, for each otherwise time-barred medical claim, they received improper notifications of adverse benefit determinations from Defendants in violation of the DOL Regulation.  *See, e.g.*, SAC ¶¶ 57–64.[12]  In their opposition to Defendants' motion to dismiss, Plaintiffs assert that "[n]one of the applicable plans include their respective time limitation in the summary plan description," "the shortened time limitations were not listed on [Defendants'] claim correspondence," and they identify page numbers in the summary plan descriptions that were provided to the Court by Defendants in their motion to dismiss.  *See* Plaintiffs' Mem. at 18 (citing Defendant's declaration at Dkt. No. 66, filed in support of their motion to dismiss); Objections at 17 (restating this argument and again citing Defendant's declaration at Dkt. No. 66).  But "[i]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss."  *See, e.g.*, *Budhani v. Monster Energy Co.*, No. 20-CV-1409

---

[12] For example, Plaintiffs have failed to adequately allege in the SAC whether *each* notification of adverse benefit determination, if any were provided for these 37 medical claims, set forth a "description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review" in accordance with the regulation. *See* DOL Regulation Section 2560.503-1(g)(1).

(LJL), 2021 WL 5761902, at *3 (S.D.N.Y. Dec. 3, 2021) (collecting cases) (internal quotation marks and citation omitted).  Accordingly, because Plaintiffs have failed to adequately allege regulatory noncompliance in the SAC as to each of these 37 medical claims filed outside the contractual limitations periods, the Court need not reach the issue of whether any noncompliance with the DOL Regulation waives the plan limitations periods here.

In light of the foregoing, the Court adopts Judge Parker's recommendation dismissing 37 of the 209 medical claims governed by ERISA plans as time-barred under the terms of the plans.

### B.  Plaintiffs' Section 502(a)(3) Claims

In Count Two of the SAC, Plaintiffs assert a claim under Section 502(a)(3) of ERISA, seeking injunctive and equitable relief because of Defendants' alleged failures (1) to provide specific reasons for denying or underpaying reimbursements for the medical claims, and (2) to provide the specific plan provisions Defendants relied on for the denials.  Judge Parker concluded that Plaintiffs' Section 502(a)(3) claims can be dismissed on the same grounds as Plaintiffs' claims under Section 502(a)(1)(B), namely, based on Plaintiffs' failure to adequately plead participant/beneficiary status and wrongful denial of benefits.  *See* R&R at 9, 17–20.  This conclusion, to which Plaintiffs do not object, is correct.  Accordingly, the Court adopts Judge Parker's recommendation that Count Two be dismissed for failure to state a claim.

### C.  Declining to Exercise Supplemental Jurisdiction

Last, Judge Parker recommended that the Court "decline to exercise supplemental jurisdiction over the state law claims and that it dismiss these claims."  *See* R&R at 33–34.  Plaintiffs did not object to this recommendation.  Therefore, the Court reviews this portion of the R&R for clear error and finds none.  *See, e.g.*, *IndyMac Bank, F.S.B.*, 2008 WL 4810043, at *1.  The Court therefore adopts this portion of the R&R in full.

### IV.   LEAVE TO AMEND

The Court declines to adopt Judge Parker's recommendation that leave to amend the

complaint be denied.  *See* R&R at 34–35.  In this Circuit, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  However, leave to amend may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)); *see also Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 148 n.4 (2d Cir. 2020) ("Under Rule 15(a)(2), leave to amend should be freely given unless there is "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.") (quoting *Foman v. Davis*, 371 U.S. 178, 182–83 (1962)).  "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (quoting *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018)).  "A plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine SA*, 758 F.3d at 505.

Here, as Judge Parker acknowledged, "Plaintiffs already amended the complaint twice and have had the opportunity to take discovery," and "despite being on notice of the SAC's deficiencies, Plaintiffs did not seek leave to amend the complaint and have not asserted that they could plead additional facts to cure the deficiencies identified in the SAC." R&R at 34–35.  Plaintiffs objected to this recommendation, noting that Plaintiffs' prior two amendments of the complaint "were [made] before the Practice's claims were judicially scrutinized," and arguing that Plaintiffs should therefore be granted leave to amend.  Objections at 19–20.  The Court agrees:  Plaintiffs have not yet had the benefit of the Court's analysis on Defendants' motion to dismiss. *Cf. Payne v. Malemathew*, No. 09-CV-1634, 2011 WL 3043920, at *5 (S.D.N.Y. July 22, 2011) (denying leave to amend where

"Plaintiff was provided notice of his pleading deficiencies and the opportunity to cure them"); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F.Supp.2d 222, 242 (S.D.N.Y. 2005) (similar), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007). The pleading deficiencies identified in this opinion—including those on the DOL Regulation timeliness issue—may be corrected, so amendment is not necessarily futile.[13] Accordingly, leave to amend is granted to cure the deficiencies identified in the R&R and the Court's opinion adopting it.

Any amended complaint must be filed within forty-five days from the date of this opinion. As described in the R&R and above, the principal defects in the complaint stem from the fact that Plaintiffs have attempted to consolidate their claims for 291 medical claims that arise under 72 separate health insurance plans in a single federal action containing only seven claims for relief. The Court has substantial concerns that these claims have been improperly joined into a single federal action. The Court also has substantial concerns regarding whether the Court has supplemental jurisdiction over the claims under non-ERISA plans because it is unclear why they can be said to "derive from a common nucleus of operative fact" as the claims arising under the several ERISA plans that are the subject of this action. *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004)). The Court expects to issue a separate order to show cause regarding improper joinder and the Court's subject matter jurisdiction over state law claims involving the non-ERISA plans. The Court has set an extended deadline for the filing of the amended complaint to permit time for the issuance of—and response to—that order.

---

[13] Indeed, Plaintiffs noted that "the Practice can supplement its pleading with the additional, detailed facts that the Magistrate Judge recommends be required." *See* Objections at 20 n.5. With respect to the plans containing anti-assignment provisions, moreover, the Court has not dismissed these claims with prejudice only because Plaintiffs *may* amend their complaint to plead allegations sufficient to support Plaintiffs' theory of waiver. *See, e.g.*, R&R at 22 n.10 (collecting plans that "include language that claims are not assignable 'without the written consent of the Plan'"). In the absence of allegations of waiver that are adequately pleaded—and applicable to each medical claim for each plan with an anti-assignment provision—the Court expects that the claims involving plans with anti-assignment provisions would be dismissed with prejudice.

## V.     CONCLUSION

For these reasons, the Court accepts and adopts the thorough R&R nearly in full, with the exceptions that the Court modifies the reasoning on the timeliness issue, and grants leave to amend.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 63.

SO ORDERED.

Dated:  March 14, 2024
New York, New York

_____
GREGORY H. WOODS
United States District Judge